IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PERRY SHAPIRO,<br><br>On behalf of himself and on<br>behalf of all others similarly situated,<br><br>　　　　　　　　　　Plaintiffs,<br><br>　　　v.<br><br>J.P. MORGAN CHASE & CO. and<br>J.P. MORGAN CHASE RETIREMENT<br>PLAN,<br><br>　　　　　　　　　　Defendants. | :<br>:<br>:<br>:<br>:<br>: Civil Action No.<br>:<br>: Jury Trial Demanded<br>:<br>:<br>: CLASS ACTION<br>:<br>: |

RECEIVED FEB 16 2006 U.S.D.C. S.D.N.Y. CASHIERS

## CLASS ACTION COMPLAINT

Plaintiff Perry Shapiro alleges on behalf of himself and a class of all others similarly situated as follows:

### NATURE OF THE ACTION

1.　Plaintiff, a participant in the J.P. Morgan Chase Retirement Plan (the "Plan"), brings this action on behalf of himself and all individuals, whether active, inactive or retired, who participated in the Plan at any time on or after January 1, 1997 (the "Class Period"), their beneficiaries and estates, and those who are subject to the Plan's cash balance formula (the "Class"), pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq.

2.　As described herein, plaintiff alleges, *inter alia*, that defendants amended the plan, effective January 1, 1997 (the "January 1, 1997 Plan Amendment"), to replace the Plan's existing benefit accrual formula with a cash balance formula (the "Cash Balance Formula") that violates ERISA's minimum accrual standards and age-based accrual rules.

3.  Accordingly, Plaintiff asks the Court, *inter alia*, to declare that the Plan's cash Balance Formula violates ERISA's minimum accrual standards and age-based accrual rules for defined benefit plans; to enjoin defendants from enforcing the Plan's unlawful benefit formula; to order defendants to bring the terms of the Plan into compliance with ERISA; and to award Plaintiff and the Class the benefits they have lost as a result of the Plan's unlawful benefit formula.

## JURISDICTION AND VENUE

4.  This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 and ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

5.  Declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, respectively, by Rules 57 and 65 of the Federal Rules of Civil Procedure and by ERISA Sections 502(a)(1)(B) and 502(a)(3), 29 U.S.C. §§ 1132(a)(1)(B), and (a)(3).

6.  Venue is proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the breach upon which this suit is premised occurred in this judicial district and Defendants and the Plan reside and/or may be found in this judicial district.

## EXHAUSTION OF REMEDIES

7.  Exhaustion of Plan remedies is not required because the issues involved in this action are only issues of law.

## PARTIES

8. Plaintiff Perry Shapiro, a New York resident was an employee of J.P. Morgan Chase & Co. and a participant of the Plan, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), during the Class Period and is subject to the Plan's Cash Balance Formula.

9. Defendant the J.P. Morgan Chase Retirement Plan (the "Plan") is an "employee pension benefit plan" within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A), and more precisely, a "defined benefit plan" within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(35). The Plan is the successor-in-interest of the Retirement Plan of The Chase Manhattan Bank and Certain Affiliated Companies.

10. Defendant J.P. Morgan Chase & Co. ("Chase" and/or the "Company") is a Delaware corporation and bank holding company with principal executive offices in New York, NY. It sells financial services and products through numerous subsidiaries throughout the country and employs thousands of full time employees. According to its 2004 annual report, the Company has $1.2 trillion in assets and has operations in over 50 countries.

11. J.P. Morgan Chase & Co. is the successor-in-interest to The Chase Manhattan Bank, Chemical Bank, and MHT as well as many other companies participating in the employee benefit plans at issue in this case. Unless otherwise specified, reference to J.P. Morgan Chase & Co. ("Chase" or the "Company") in this Complaint should be read as J.P. Morgan Chase & Co, in its own right, and as successor to The Chase Manhattan Bank, Chemical Bank, and MHT and to every other company participating in the employee benefit plans at issue in this case and/or every other company whose plans or plan assets or employees were merged into, directly or indirectly, the J.P. Morgan Chase Retirement Plan.

12. Chase was and is the sponsor of the J.P. Morgan Chase Retirement Plan (the "Retirement Plan") within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B).

## CLASS ALLEGATIONS

13. Plaintiff brings this action on his own behalf and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of a Class of all persons similarly situated, including all Plan participants, whether active, inactive or retired, their beneficiaries and estates, whose accrued benefits or pension benefits are based in whole or in part on the Plan's Cash Balance Formula and who participated in the Plan at any time on or after January 1, 1997.

14. The members of the Class are so numerous, comprising more than tens of thousands of members, that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

15. There are questions of law common to all members of the Class that predominate over questions which may affect individual Class members. Those common questions of law include:

> A. Whether the Plan's Cash Balance Formula complies with ERISA and if not, how to bring it into compliance;
>
> B. How the benefits earned by the Plan's participants are calculated;
>
> C. Whether the benefits provided under the terms of the Plan accrue at a rate that is reduced because of age;
>
> D. Whether the Class is entitled to a clarification of future benefits pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B);

      E.      Whether the Class is entitled to a mandatory injunction pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3); and

      F.      The extent of any damage suffered and the appropriate measure of damages.

16.   Plaintiff's claims are typical of those of the Class because Plaintiff and the Class have been damaged by the same wrongful conduct described below.

17.   Plaintiff will fairly and adequately protect the interests of the Class and have retained counsel who are experienced in class actions and litigation of this nature. Plaintiff has no interests that conflict with those of the Class.

18.   In addition, class action is superior to other available methods for the fair and efficient adjudication of this controversy because, pursuant to Fed. R. Civ. P. Rule 23(b)(1), the prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications establishing incompatible standards of conduct for Defendants and a risk of adjudications, which as a practical matter, would be dispositive of the interests of other Class members who were not parties. In addition or in the alternative, pursuant to Fed. R. Civ. P. Rule 23(b)(2), class action certification is proper as Defendants here acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive or equitable relief or corresponding declaratory relief with respect to the class as a whole.

## FACTS

### A.   Background

19.   Plaintiff is a former employee of the Company and, during the relevant Class Period, a "participant" in the Plan within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7). The Plaintiff has accrued benefits under the Cash Balance Formula.

20.   The Plan defines the benefit earned by employees with reference to the amount of their individual hypothetical account (the "Account"). Each year an employee's hypothetical Account is credited with a percentage of compensation ("Salary-Based Credits") and interest based on the balance in the Account ("Interest Credits"). The Interest Credits are pegged to the average annual rate of interest on a 1-year U.S. Treasury security, plus 1% ("Interest Rate").

21.   Although the Plan (a cash balance plan) provides for an individual Account for each participant, it is defined under ERISA (Section 3(35), 29 U.S.C. § 1002(35)) as a "defined benefit plan," which is "a pension plan other than an individual account plan."

22.   At retirement, the Account with Salary-Based Credits and Interest Credits accumulated through the date that benefits are to commence, is converted to an annuity benefit using actuarial assumptions specified in the Plan unless the participant and the participant's spouse, if any, consents to a different form of benefit.

23.   Prior to January 1, 1997, participants in the Plan, including Plaintiffs, accrued annual benefits equal to the product of 1% of their Final Average Salary and years of service after December 31, 1992. The Plan defined Final Average Salary as the average of a participant's five highest years of compensation during the participant's last ten years of employment. The Chase

6

Plan refers to this as the benefit under the "Final Salary Benefit." (The benefit earned through December 31, 1996 is hereinafter referred to as the "Final Salary Benefit").

24. Effective January 1, 1997, Chase enacted the January 1, 1997 Plan Amendment, which amended the Plan to freeze the Final Salary Benefit for certain participants, so that the amount of the Final Salary Benefit received upon retirement was an amount calculated as if the participants left Chase on the last day of 1996.

25. Effective with the January 1, 1997 Plan Amendment, the prior benefit formulas of the merged plans were changed to the Cash Balance Formula. Each participant retained their Final Salary Benefit, and benefits accrued after December 31, 1996 were accrued according to the new Cash Balance Formula. Thus, at retirement, an employee who participated in the Plan before and after January 1, 1997, receives a retirement benefit equal to the sum of the frozen Final Salary Benefit plus any benefits accrued under the Cash Balance Formula. An employee who began participation in the Plan on or after January 1, 1997, accrues benefits only under the Cash Balance Formula.

### B. Relevant Plan Provisions

26. The Plan, a cash balance plan that is a defined benefit pension plan, must comply with all of ERISA's provisions governing defined benefit pension plans, including at least one of the following three minimum accrual rules: (1) 3% rule; (2) 133 1/3% rule; or (3)fractional rules set forth at ERISA Sections 204(b)(1)(A), (B) and (C), 29 U.S.C. §§ 1054(b)(1)(A), (B) and (C)), respectively. The main purpose of those rules is to outlaw the "backloading" of benefits, i.e., to keep a plan from providing disproportionately higher benefits for later years of service, thereby circumventing ERISA's early vesting provisions.

27. The Plan's Cash Balance Formula provides that Salary-Based Credits are based on lifetime compensation. Since both the 3% and the fractional rules provide that, where pension benefits are based on compensation, such compensation cannot be averaged over more than ten years, the only accrual rule with which the Cash Balance Formula can comply is the 133 1/3% rule.

28. The 133 1/3% rule provides in pertinent part that no later rate of accrual can be more than one third greater than any earlier rate:

> A defined benefit plan satisfies the requirements of this paragraph of a particular plan year if .... the annual rate at which any individual who is or could be a participant can accrue the retirement benefit payable at normal retirement age under the plan for any later plan year is no more than 133 1/3 percent of the annual rate at which he can accrue benefits for any plan year beginning on or after such particular plan year and before such later plan year.

29. Article 4.3 of the Plan, as amended, sets forth in Table 4.3(b) the percentage used to calculate the Benefits Credit is based upon a participant's completed full years of pay credit service. Those percentages provide compensation ranging from a Benefit Credit of 4 % for participants in their first three years of service, to a Benefit Credit of 14% for participants with 26 or more years of service.

30. Obviously, 14% is more than 133 1/3% of 4%. Thus, the rate of accrual of the Benefit Credits does not comply with the 133 1/3% rule and constitutes improper "backloading."

31. In the case of a defined benefit pension plan, ERISA Section 3(23)(A), 29 U.S.C. § 1002(23)(A), defines "accrued benefit", in pertinent part as: "The individual's accrued benefit determined under the plan . . . expressed in the form of an annual benefit commencing at normal retirement age." As required by this definition, for purposes of compliance with the 133 1/3% rule, the portion of the accrued benefit, attributable to Interest Credits is not the amount actually allocated

8

to the Account, but rather the amount obtained by projecting the Interest Credits to the normal retirement age, *i.e.*, age sixty-five under the terms of the Plan. As a consequence, the younger the participant, the greater the value at normal retirement age of the Interest Credits "accrued" each year.

32. Since the value of Interest Credits is inversely proportional to advancing age, Interest Credits are said to be "frontloaded," in contrast to Salary-Based Credits which are "backloaded." Therefore, in order for the combined accrual rate under the Cash Balance Formula to comply with the 133 1/3% rule, the frontloading of Interest Credits must counterbalance the backloading of Salary-Based Credits.

33. The Plan provides for a periodic Interest Rate, rather than a fixed rate (Plan Article 1.52), as follows:

> "Interest Rate" means, for a Plan Year, the average annual interest rates for one-year United States Treasury Constant Maturities for the months of September, October and November immediately preceding the Plan Year, as published in the Federal Reserve Statistical Release L13 (415) (or if unavailable, a similar publication) (the "minimum rate") plus (ii) effective for Plan Years through 1996, such additional interest rate, if any, as established by the Plan Administrator, in its sole discretion, for such Plan Year through written resolution adopted thereby (which written resolution shall constitute an amendment to the Plan), and effective January 1, 1997 and each Plan Year thereafter, the additional interest rate shall be one percent.

34. Where, as here, Salary-Based Credits are backloaded and the interest rate governing Interest Credits is a variable interest rate, the only way to insure that the overall rate of accrual of the Cash Balance Formula will comply with the 133 1/3% rule (*i.e.*, that no later rate of accrual than one third greater than any earlier rate), is to provide for a minimum interest rate guarantee.

35. Based upon the Benefits Credit in effect at all times relevant hereto, the minimum interest rate that would insure against unlawful backloading of the overall Cash Balance Formula

9

cannot be less than 5.21%. The 1-year Treasury rate plus 1% that determines the Plan's Periodic Interest Rate, however, has been below the necessary 5.21% since at least January 2002.

36. The Cash Balance Formula also provides a declining rate of accrual based on the fact that because an older worker who retires at the same age as a younger worker has fewer years to earn interest than the younger worker, and therefore will receive a smaller annuity upon retirement as a result, at least in part, of his or her age. This is illustrated by the chart below:

### RATE OF BENEFIT ACCRUAL BY AGE*

| One Employee Over Time | Age | Accruing Factor | Eligible Pay | Pay-Based Credit | LumpSum | Annuity | Benefit Accrual Rate |
|---|---|---|---|---|---|---|---|
| | 55 | 4% | 100,000 | $4,000 | 6,516 | 709 | .71% |
| | 56 | 4% | 100,000 | $4,000 | 6,205 | 675 | .68% |
| | 57 | 4% | 100,000 | $4,000 | 5,910 | 643 | .64% |

| Two New Employees Compared | Age | Accruing Factor | Eligible Pay | Pay-Based Credit | Lump Sum | Annuity | Benefit Accrual Rate |
|---|---|---|---|---|---|---|---|
| | 40 | 4% | 100,000 | $4,000 | 13,545 | 1,473 | 1.47% |
| | 60 | 4% | 100,000 | $4,000 | 5,105 | 555 | .56% |

*Assume retirement at age 65, interest rate: 5%; purchase rate: 9.196

### FIRST CLAIM FOR RELIEF

### FOR VIOLATION OF ERISA § 204(b)(1)(B), 29 U.S.C. § 1054(b)(1)(B), AND 26 C.F.R. § 1.411(b)-1(b)(2)

37. Plaintiffs repeat and reallege each and every allegation above.

38. The Plan must comply with at least one of ERISA's three minimum accrual standards for defined benefit plans found in subparagraphs (A), (B) or (C) of ERISA § 204(b)(1), 29 U.S.C.

§ 1054(b)(1). However, effective as of January 1, 1997, and at all times thereafter, benefits accruing under the terms of the Plan do not satisfy any of these three standards.

39. Since the Plan's Cash Balance Formula is based upon lifetime compensation, the only rule the Plan could comply with is the 133 1/3 % rule (no later accrual rate can be more than one third greater than an earlier rate). Because the Plan's Salary-Based Credit accrual percentages increase with years of service by more than one-third, the Salary-Based Credit is "backloaded."

40. Since the Salary-Based Credit is backloaded, to comply with the 133 1/3% rule, the Interest Credits frontloading must counterbalance the backloading, The only way to insure this counterbalance and thus, compliance with the 133 1/3% rule, is to provide a minimum guaranteed interest rate. The Plan, however, only provides for a variable interest rate (tied to the 1-year U.S. Treasury Security), with no minimum interest guarantee.

41. Accordingly, by providing a Cash Balance Formula with backloaded Salary-Based Credits and frontloaded Interest Credits based upon a variable interest rate, while failing to provide for an appropriate minimum interest rate guarantee, the Plan violates the 133 1/3% rule under ERISA Section 204(b)(1)(B), 29 U.S.C. §1054(b)(1)(B), and 26 C.F.R. § 1.411(b)-1(b)(2).

## SECOND CLAIM FOR RELIEF

### FOR VIOLATION OF ERISA § 205(g), 29 U.S.C. § 1055(g) AND IRC § 417(e)

42. Plaintiffs repeat and reallege each and every allegation above.

43. Because ERISA's definition of accrued benefit is framed in terms of the retirement benefit payable at normal retirement age, a participant's Account balance does not necessarily reflect

the full actuarial value of his accrued benefit. Thus, for a cash balance plan such as this, the calculation involves projecting the cash balance forward and then discounting it back to the present value. The projection rates may be defined by the plan, but the discount rate is prescribed by statute IRC § 417(e) and ERISA Section 205(g), 29 U.S.C. § 1055(g) (the "statutorily-prescribed discount rate").

44. If the plan's projection rate exceeds the statutory discount rate, then the present value of the accrued benefit will exceed the participant's Account balance. Unless the higher amount is paid to the participant, the Internal Revenue Service takes the view that an impermissible forfeiture has occurred, otherwise known as a "whipsaw." When a whipsaw occurs, payment of only the cash account balance will no longer constitute a complete distribution of the actuarial equivalent of the employee's accrued benefit, an equivalency required by ERISA Section 3(23)(A) and 204(c)(3), 29 U.S.C. §§ 1002(23)(A) and 1054(e)(3).

45. If the interest rate used by a cash balance plan to project the account balance at normal retirement age (the "projection rate") and the statutorily-prescribed discount rate are identical, however, then the present value of the account balance projected forward to normal retirement age determined by this computation will be exactly the current account balance. It follows that a plan which provides for Interest Credits at the statutorily-prescribed discount rate may pay out the cash account balance as the actuarial equivalent of the accrued benefit.

46. As noted earlier, to avoid violation of the 133 1/3% rule, the Plan must provide a minimum Interest Credit rate, *i.e.*, a projection rate of 5.21%. While providing such a minimum projection rate will enable the Plan to comply with the 133 1/3% rule, it will also create a "whipsaw" because the 5.21% projection rate will exceed the applicable 30-year Treasury rate, which rate has

been below 5.21% since at least 2002. As a consequence, the Account balance will no longer be actuarially equivalent to the "accrued benefit."

47. For example, in the case of a 45-year old participant with a hypothetical Account balance of $100,000 under the Plan, terminating employment in February 2006 and electing an immediate lump sum distribution, the interest rate used to calculate the value of the lump sum under IRC Section 417(e)(3) of the Code and Section 205(g)(3) of ERISA would be 4.68%, the 30-year Treasury rate in effect for October, 2005. If the Plan contained a minimum projection interest rate of 5.21% in order to comply with the 133 1/3% rule, the projected balance of the employee's hypothetical Account as of normal retirement age would have been $276,147, then discounted to age 45 at 4.68% equals $110,628. Accordingly, if the Plan paid the hypothetical balance of $100,000, the employee would have received $10,628 less than he or she was entitled.

48. Thus, after, the Plan is reformed to bring it into compliance with the 133 1/3% rule by adding a minimum interest guarantee of 5.21%, the Plan's definition of accrued benefit under section 4.5 – the cash balance account as of any determination date – will violate IRC Section 417(e) and ERISA Section 205(g), 29 U.S.C. § 1055(g) (the statutorily-prescribed discount rate) by incurring the "whipsaw" violation described in IRS Notice 96-8.

### THIRD CLAIM FOR RELIEF

### FOR VIOLATION OF ERISA § 204(b)(1)(H)(i), 29 U.S.C. § 1054 (b)(1)(H)(i)

49. Plaintiffs repeat and reallege each and every allegation above.

50. Effective as of January 1, 1997, and at all times thereafter, benefits provided under the terms of the Plan pursuant to the Cash Balance Formula are reduced because of age or the

attainment of any age, and therefore the Plan does not comply the minimum accrual standard of ERISA § 204(b)(1)(H), 29 U.S.C. § 1054(b)(1)(H).

51.  ERISA § 204(b)(1)(H)(i), 29 U.S.C. § 1054 (b)(1)(H)(i), provides that a plan's rate of accrual must comply not only with ERISA's anti-backloading provisions, but also avoid reducing the rate of accrual based on increasing age:

> Notwithstanding the preceding subparagraphs [i.e., ERISA's three benefit accrual requirements], a defined benefit plan shall be treated as not satisfying the requirements of this paragraph if, under this plan, an employee's benefit accrual is ceased, or the rate of an employee's benefit accrual is reduced, because of the attainment of age.

52.  The additional amount accrued by a participant in the last year of service pursuant to Article 4.5 is derived by projecting a participant's Credit Balance to the normal retirement age, assuming continued accrual of Salary Based Credits and Interest Credits to that age. Thus, the older the participant in the last year of service, the smaller the "additional amount" to be added to his Credit Balance. Thus, the additional amount is worth less and less as the participant ages.

53.  Plan Article 4.5, by causing the additional amount accrued in the last year of service to be inversely proportional to increasing age, reduces the rate of accrual on account of age, in violation of ERISA § 204(b)(1)(H)(i), 29 U.S.C. § 1054 (b)(1)(H)(i).

54.  For example - assuming a normal retirement age of 65, an interest rate of 5%, and a purchase rate of 9.196 - for an employee who was 40 years old on joining the Plan and who earned a salary of $100,000, the value of his first Benefit Credit of $4,000 (4% of compensation) projected forward to normal retirement age (25 years) at 5%, would be a lump sum value of $13,545 and an annuity value of $1,473. By contrast, for an employee who was 60 years old on joining the Plan and who also earned a salary of $100,000, the value of his first Benefit Credit of $4,000 (also 4% of compensation) projected forward to normal retirement age (5 years) at 5%, would be a lump sum

value of $5,105 and an annuity value of $555 - i.e. the 60 year old starting employee's lump sum accrual is "reduced, because of the attainment of any age," by a lump sum value of $8,440 and an annuity value of $918. Because the rate of accrual under the Plan diminishes with age, the minimum guaranteed interest rate of 5.21% required to avoid backloading will decrease the rate of accrual even further with advancing age.

55. By providing for a rate of accrual that decreases with advancing age, the Cash Balance Formula causes the rate of a participant's benefit to be "reduced, because of the attainment of any age" in violation of ERISA §204(b)(1)(H)(i), 29 U.S.C. § 1054(b)(1)(H)(i).

56. Pursuant to ERISA § 502(a)(3), 29 U.S.C. 1132(a)(3), plaintiff is entitled to a judgment to enjoin the Plan and Chase from continuing to violate the foregoing provisions of ERISA and to determine, calculate and award his benefits in a manner which is consistent with such provisions.

57. Pursuant to ERISA § 502(a)(3), 29 U.S.C. 1132(a)(3), plaintiff is entitled to appropriate relief to redress the Plan's violations of the foregoing provisions of ERISA and to enforce such provisions.

## FOURTH CLAIM FOR RELIEF

## FOR VIOLATION OF ERISA § 204(h), 29 U.S.C. § 1054(h)

58. Plaintiffs repeat and reallege each and every allegation above.

59. At the relevant time, ERISA § 204(h), 29 U.S.C. § 1054(h), provided in pertinent part that a defined benefit plan:

> may not be amended so as to provide for a significant reduction in the rate of future benefit accrual, unless, after adoption of the plan amendment and not less than 15 days before the effective date of the plan amendment, the plan administrator provides a written notice, setting forth the plan amendment and its effective date, to (A) participants in the plan ...

60. The adoption of the Cash Balance Formula effective January 1, 1997 effected significant reductions in the rate of future benefit accruals for Class members.

61. Upon information and belief, in announcing the adoption of the Cash Balance Plan, Defendants did not comply with the requirements of ERISA § 204(h), 29 U.S.C. § 1054(h).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment as follows:

I. Certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and declaring Plaintiffs to be proper class representatives;

II. Declaring:

    A. that the Plan's failure to contain a minimum interest guarantee of 5.21% for Interest Credits violates ERISA Section 204(b)(1)(B), 2 U.S.C. §. 1054(b)(1)(B);

    B. that the Plan's provision that the "accrued benefit" as of any determination date is equal to the cash balance account violates ERISA Section 205(g) and IRC Code Section 417(e);

    C. that the cash balance formula violates ERISA's age-based accrual provisions, ERISA Section 204(b)(1)(H)(i), 29 U.S.C. §. 1054(b)(1)(H)(i); and

III. Enjoining Defendants

    A. from enforcing the Plan's unlawful provisions; and

    B. to comply with the terms of the Plan by declaring a partial termination of the Plan effective January 1, 1997 and treating the accrued benefits as non-forfeitable;

IV. Ordering Defendants, retroactive to the date of the cash balance formula:

A. to adopt a minimum interest rata guarantee of 5.21% that will insure that the Cash Balance Formula cannot be backloaded (First Claim for Relief);

B. to amend the Plan to provide that the lump sum value of the "accrued benefit", is not the balance in the Account, but a lump sum based on a minimum projection interest rate of 5.21%, reduced by the statutorily-prescribed discount rate (Second Claim for Relief);

C. to amend the Plan's rate of accrual to provide that the rate of benefit accrual in any year may not be less than 75% of the rate of benefit accrual in any subsequent year;

D. to amend the Plan's rates of accrual to make them age-neutral, by extending the rate of accrual applicable to the youngest participant to all participants (Third Claim for Relief);

E. to amend the Plan to provide that participants are entitled to the greater of the benefit calculated under the pre-cash balance formula or the cash balance formula, as amended to comply with ERISA; and

F. to recalculate the accrual benefits of all Class members, under the terms of the Plan, as amended, to comply with ERISA, and to pay the difference, with interest, to all Class members already in pay status; and

V. Awarding Plaintiffs:

A. their costs, disbursements and expenses herein;

B. reasonable attorneys' fees; and

C. such other relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable.

Dated:       February 16, 2006

                                                          **KIRBY McINERNEY & SQUIRE, LLP**

By: _____
        Peter S. Linden (PL8945)
        Andrew T. Watt
        830 Third Avenue
        New York, New York 10022
        (212) 371-6600
        Fax: (212) 751-2540

Counsel for Plaintiff